**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TENNESSEE**
**EASTERN DIVISION**

| | |
|---|---|
| **In re:** <br> **Lambuth University,** <br><br> **Debtor.** | **Case No. 11-11942 GHB** <br> **Chapter 11** |

**RADIAN ASSET ASSURANCE INC.'S OBJECTION TO DEBTOR'S EMERGENCY MOTION FOR AN ORDER AUTHORIZING DEBTOR TO ENTER INTO LEASE OF PREMISES TO THE STATE OF TENNESSEE, BOARD OF REGENTS**

In support of its Objection to Debtor's Emergency Motion for an Order Authorizing Debtor to Enter into Lease of Premises to the State of Tennessee, Board of Regents (Docket No. 87) (the "Motion"), Radian Asset Assurance Inc. ("Radian") states:

1.  The hearing on the Motion is set for August 4, 2011 at 10:00 a.m.

## RADIAN'S ROLE AND THE BONDS

2.  Radian insures payment to bondholders of principal and interest on two series of bonds that were issued in 1995 (the "Bonds") for the benefit of Debtor.

3.  Any such payment of principal and interest on the Bonds by Radian does not relieve Debtor of its payment obligations with respect to the Bonds, and Radian will be subrogated to the rights of the bondholders to receive such payments from Debtor.

4.  The Bonds were issued by The Health, Educational and Housing Facility Board of the City of Jackson (the "Issuer"), pursuant to an Indenture of Trust, dated as of September 1, 1995 (the "Indenture") between the Issuer and the predecessor in trust to The Bank of New York Mellon Trust Company, N.A., as trustee (the "Bond Trustee").

5.  The Issuer lent the proceeds of the Bonds to Debtor pursuant to a Loan and Security Agreement, dated as of September 1, 1995 (the "Loan Agreement") between Debtor and

the Issuer, the rights in which have been assigned to the Bond Trustee as security for the repayment of the Bonds.

6. Pursuant to the Loan Agreement, Debtor is required to make payments to the Bond Trustee in amounts sufficient to pay the principal of and interest on the Bonds (such payments, together with other required payments under the Loan Agreement, the "Loan Payments").

7. Debtor's obligation to make the Loan Payments with respect to the Bonds is secured, *inter alia*, by a senior lien on Debtor's most valuable campus buildings and other assets, including security provided under a Deed of Trust and Security Agreement, dated as of September 1, 1995 (the "Deed of Trust"), between Debtor and the Deed of Trust trustee named therein for the benefit of the Bond Trustee.

8. The Indenture, the Loan Agreement, the Deed of Trust, and the other documents pursuant to which the Bonds were issued or are secured are referred to herein as the "Bond Documents."

9. The unpaid principal on the Bonds is $4,960,000.00. Interest, attorneys fees, Bond Trustee fees, and other amounts are also due under the Bond Documents. A principal amortization of $370,000.00 and an interest payment of $153,120.00 (for a total of $523,120.00) are due on the Bonds on September 1, 2011, from monthly payments required to be made by Debtor. Debtor has not made any such monthly payments since March, 2009.

10. Debtor was in default on its payments and other covenant obligations under the Bond Documents and notice of default was given prior to Debtor's Chapter 11 filing on June 30, 2011.

11. Under the Bond Documents, Radian, as the insurer of payments to the bondholders, is authorized to control all rights and remedies thereunder and to direct the Bond Trustee to take such actions as are necessary and appropriate in addressing repayment, collateral, default issues, etc. The relief requested in the Motion is such an instance, and Radian is the party in interest to be heard. Radian objects to the Motion and requests a hearing.

## BACKGROUND

12. Debtor ceased academic operations as of June 30, 2011.

13. Debtor desires to transfer its campus (other than Lions' Field) to the State of Tennessee (the "State") for the use and benefit of the University of Memphis pursuant to the lease attached as Exhibit A to the Motion (the "Lease"). The University of Memphis is interested in obtaining the campus and holding classes there beginning with the upcoming semester. The unusual situation here, however, is that unlike a typical lease arrangement where substantial consideration is paid to the owner and provisions are made for the secured creditor, the University of Memphis is not paying anything to lease or acquire the campus, has no funding to pay for it, and is precluded from paying any of Debtor's obligations.

14. Debtor indicates in its Motion (paragraph 6) that a "local 'Stakeholder Group' has agreed in principal [sic], subject to certain governmental entities' approval, to purchase [Debtor's] assets and immediately transfer them to the State of Tennessee for use by the University of Memphis." The Stakeholder Group consists of (1) the City of Jackson, Tennessee, (2) Madison County, Tennessee, (3) Jackson Energy Authority, and (4) West Tennessee Healthcare. As indicated by Debtor, there is no firm offer from the Stakeholder Group. Even if there were a firm offer from the Stakeholder Group, this Court has not approved a sale by

Debtor, and Debtor admits in the Motion that it "does not seek authority to sell the assets" (Motion, paragraph 11).

15. Radian's experience during its communications with Debtor and the Stakeholder Group (both prepetition and postpetition) is that there are numerous issues outstanding with respect to the transfer of the campus, the consideration for any such transfer, the allocation of that consideration (including to the trust estate for the Bonds), the timing of any closing, and the extended time it may take for the State to take title to real estate.

16. Debtor states that the Tennessee Higher Education Commission and the Tennessee Board of Regents recently approved the transfer of the campus to the State. (Motion, paragraph 6). This approval, however, was subject to certain conditions and approvals that have not yet been met.

17. Such conditional approval followed the Lambuth Campus Feasibility Study conducted by the Tennessee Higher Education Commission dated July 28, 2011 (the "State Report"). A true and authentic copy of the State Report is attached hereto as **Exhibit A** and incorporated herein by reference. The State Report references that Debtor's property was valued at $38.3 million by James P. Mudaugh, TN State Certified General Real Estate Appraiser in a December, 2009 appraisal and, notably, that the current condition of the Debtor's facilities is consistent with the conditions found during an initial 2009 visit. (**Exhibit** A, State Report, pages 14-15).

18. As detailed in the State Report, the University of Memphis received an appropriation of $5 million in non-recurring funding for 2011-12 to support operations at the Lambuth campus. (**Exhibit A**, State Report, pages 20 and 25 (citing Public Chapter No. 473)). Several conditions must be met <u>before</u> these funds are available. Of paramount concern is the

condition that the funding from the State is not available unless *inter alia* "all outstanding debt of [Debtor] has been paid off from non-state sources." (**Exhibit A**, State Report, pages 20 and 25 (citing Public Chapter No. 473)) (emphasis added).  Debtor has not indicated a desire to repay the Bonds in full or an ability to pay all of its creditors in full.  Thus, essential funding for the University of Memphis would not be available to support operations there.  Against this background, a lease to the State is not appropriate at this time.

## OBJECTIONS TO LEASE

19. Debtor seeks an order under Section 363(b) of the Bankruptcy Code authorizing its execution of the Lease despite no indication that the Lease has been approved by its Board of Trustees.  Assuming such approval by the Board of Trustees, the Court must find that the execution of the Lease is an appropriate exercise of Debtor's business judgment and that the execution of the Lease is in the best interests of the estate and its creditors.  Debtor cannot make a showing to support such a finding, especially when it has not reached an agreement on the sale of its campus, Debtor is unable to pay its creditors in full as a condition of funding for the University of Memphis, and the proposed tenant is only paying rent of $1.00.

20. Further, Debtor seeks not only to lease the campus but also to use the collateral for the Bonds.  As such, the Bond trust estate is entitled to adequate protection pursuant to Section 363(e) of the Bankruptcy Code.  Debtor has not offered adequate protection to the Bond trust estate, and the Bond trust estate is not adequately protected.

21. Debtor seeks to enter into the Lease with a term of one year with unlimited 30 day extensions even though Debtor has not reached agreement with Radian or the Stakeholder Group regarding key issues about the status of the campus, any transfer of the campus, and payment to creditors.  By seeking approval to execute the Lease and not having an agreement with the

appropriate parties about any eventual transfer of the campus and payment of creditors, Debtor is proceeding in the wrong order and is prejudicing Radian's rights. In other words, Debtor should have an approved, binding agreement to sell its campus and pay all of its creditors (as required by Public Chapter 473) before it leases the campus prior to a closing, especially for a proposed term of at least one year.

22.   While Radian understands that the University of Memphis wishes to hold classes in Jackson, Tennessee later this month, that wish respectfully has no bearing on the issues before the Court. The Court should deny Debtor's Motion without prejudice until an appropriate agreement is reached with respect to the transfer of the campus and payment of creditors. Otherwise, Debtor, Radian, and Debtor's other creditors would be at risk of any sale of the campus falling through and then having the University of Memphis using the campus rent-free for one year with no funding for operations (subject to Radian's decision to cause a foreclosure under the Deed of Trust should it obtain relief from the automatic stay).

23.   The Court also should deny Debtor's Motion because other significant issues exist.

24.   As a preliminary matter, Debtor has yet to file its Schedules and Statement of Financial Affairs despite this case being active for in excess of one month and Debtor having no ongoing academic operations that require its attention. Debtor's creditor matrix clearly is incomplete because it does not list (a) its employees who have claims (who were the subject of two emergency motions (See Docket Nos. 11 and 22)) and (b) the members of its Board of Trustees who Radian understands may assert some type of entitlement to repayment. Without Debtor's required showings on its Schedules and Statement of Financial Affairs, the Court should not entertain the Motion and should deny it.

25. As noted above, the term of the Lease (one year and subject to unlimited holdover extensions (Lease, paragraphs 3 and 17)) is not appropriate. This is particularly true in a situation like this where Debtor has ceased its operations and is unlikely to accomplish anything other than a sale under Section 363 of the Bankruptcy Code.

26. The Lease does not provide for property and liability insurance coverage for Debtor and, more importantly, for the interests of the Bond trust estate. Because Debtor has ceased operations and has limited funds, its ability to provide insurance going forward is clearly limited (and such coverage and ability have not been shown to Radian or the Court). The Lease does not require the State to provide such coverage. Remarkably, the Lease provides that the State can surrender the campus without liability to Debtor after damage by fire or the elements (Lease, paragraph 10). Further, in the event of a total destruction of the campus by fire or other casualty, the State can terminate the Lease without any obligation (Lease, paragraph 14).

27. Under the Lease, the State "shall have the right . . . to make alterations, attach fixtures and erect additions, structures or signs in or upon the leased premises" and the State can remove them (but is not required to do so) (Lease, paragraphs 9 and 10). This broad language does not require the State to restore the campus to its existing condition and puts the collateral for the Bonds at risk for alterations without consideration being paid to the Bond trust estate. Only if the State elects to remove its alterations is it required to restore that portion of the campus.

28. The Lease purports to give the State "quiet possession" of the campus (Lease, paragraph 11). This provision clearly is in derogation of the Bond trust estate's rights in its collateral.

29.     Under the Lease, the State is "responsible for all repair and maintenance of the premises during the existence of the Leasee [sic]." (Lease, paragraph 12).  There is no agreement by the State to make such repairs and handle such maintenance for all of the buildings on the campus and not just the ones that the University of Memphis might choose to operate (see **Exhibit A**, State Report, page 18, "as enrollment expands and UM begins to utilize more of the space on the Lambuth campus").  This provision is particularly troubling in light of the fact that Debtor has no ability to meet these obligations.

30.     Under the Lease, the State is "responsible for all services and utilities it requires at the premises during the existence of the lease." (Lease, paragraph 15) (emphasis added). There is no agreement by the State to obtain and pay for all services and utilities for all of the buildings on the campus and not just the ones that the University of Memphis might choose to operate (see **Exhibit A**, State Report, page 18, "as enrollment expands and UM begins to utilize more of the space on the Lambuth campus").  This provision is particularly troubling in light of the fact that Debtor has no ability to pay for these services and utilities.  Debtor filed its case to stay Jackson Energy Authority from terminating Debtor's utilities.  The utility cost is substantial (See List of Creditors Holding 20 Largest Unsecured Claim, Docket No. 1, listing claim of Jackson Energy Authority at $493,022.57).

31.     The Lease also provides that the State has "the right to sublet the leased premises."  (Lease, paragraph 7).  Such a provision would allow for occupancy of Debtor's campus (and the Bond trust estate's collateral) by parties further removed from oversight by this Court.

32.     The Lease fails to provide for security of the campus (a 50 acre campus)(See Motion, paragraph 9) with 19 buildings (See **Exhibit A**, State Report, page 14).

33. The Lease provides that it is not binding until all appropriate State officials' signatures have been fully obtained, approval of the Lease has been given by the State Building Commission, if applicable, and the executed Lease being returned to Debtor (Lease, paragraph 19). The Motion and the Lease contain no indication that these approvals have been obtained.

34. The Lease contains no information about the lease of Debtor's personal property or the disposition thereof.

35. Debtor did not serve the Motion and Lease on all creditors and interested parties as required by F.R.B.P. 2002(a)(2) and did not attach the Schedule A and Schedule B referenced in the Lease. Although Debtor sought and obtained an Order shortening the time for notice of the hearing (Docket No. 97), Debtor did not seek or obtain an Order limiting notice to certain creditors. Without proper notice to all creditors and interested parties, the Court should not entertain the Motion and should instead deny it.

## SUMMARY

36. Debtor has failed to demonstrate that the execution of the Lease is an appropriate exercise of its business judgment and that it is in the best interest of its estate and its creditors.

37. Radian and the Bond trust estate are not adequately protected for their collateral interests as set forth herein, especially in the absence of any provision for payment of an upcoming principal and interest payment ($523,120.00) on the Bonds or to insure the collateral.

38. Debtor did not seek a waiver of the stay provided by F.R.B.P. 6004(h). F.R.B.P. 6004(h) provides that the effectiveness of any order authorizing the use, sale or lease of property "is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Should the Court grant the Motion and Debtor tardily and without notice request such a waiver of this rule, Radian objects to any such waiver.

39. Radian respectfully reserves the right to amend and/or supplement this Objection.

WHEREFORE, the above premises considered, Radian prays that the Court deny Debtor's Motion and that Radian have such further and other relief to which it may be entitled.

Respectfully Submitted,

BASS, BERRY & SIMS PLC

By:  /s/ Stephen W. Ragland
    Stephen W. Ragland (BPR #13389)
    100 Peabody Place, Suite 900
    Memphis, Tennessee  38103
    (901) 543-5900 - Telephone
    (901) 543-5999 – Facsimile
    sragland@bassberry.com

*Attorney for Radian Asset Assurance Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served via the Court's CM/ECF electronic noticing system to all parties registered to receive electronic notices in this case U.S. and/or mail and/or overnight delivery and/or via electronic mail upon: the United States Trustee and the following parties, this 3rd day of August, 2011.

| | |
|---|---|
| Steven N. Douglass<br>2700 One Commerce Square<br>Memphis, Tennessee 38103 | Madelyn Scott Greenwood<br>OFFICE OF THE U.S. TRUSTEE<br>One Memphis Place<br>200 Jefferson Avenue, Suite 400<br>Memphis, TN 38103 |
| All American, Inc.<br>3230 Summer Ave.<br>Memphis, TN 38112 | BancorpSouth<br>P. O. Box 549<br>Jackson, TN 38302 |

| | |
|---|---|
| City of Jackson<br>107 East Main St.<br>P. O. Box 2391<br>Jackson, TN 38302 | Cline Tours<br>P. O. Box 300148<br>Memphis, TN 38118 |
| Cross Gate Services, Inc.<br>1730 Gen Geo Patton Drive<br>Brentwood, TN 37027 | FHEG Lambuth University Bookstore<br>Store No. 114<br>3146 Solutions Center<br>Chicago, IL 60677-3001 |
| Health Partners, Inc.<br>1804 Hwy. 45 By-Pass<br>Suite 400<br>Jackson, TN 38305 | Hobsons, Inc.<br>P. O. Box 641055<br>Cincinnati, OH 45264-1055 |
| Jackson Downtown Lions Club<br>P O Box 3426<br>Jackson, TN 38303 | Jackson Energy Authority<br>P. O. Box 2288<br>Jackson, TN 38302-2288 |
| Johnseys Sporting Goods<br>447 N. Royal Street<br>Jackson, TN 38301-5370 | Johnson Controls, Inc.<br>P. O. Box 905240<br>Charlotte, NC 28290 |
| Kesslers Team Sports<br>930 East Main Street<br>Richardson, IN 47374 | Mac-Gray Corp.<br>404 Wyman Street, Suite 400<br>Internal Mail Slot #13<br>Waltham, MA 02451-1264 |
| Rainey, Kizer, Reviere, Bell PLC<br>105 S. Highland Ave.<br>Jackson, TN 38301 | Riddell All American Sports<br>4230 Paysphere Circle<br>Chicago, IL 60674 |
| Skeeter Kell Sporting Goods<br>212 N. Main Street<br>Kennett, MO 63857 | Sodexo, Inc. & Affiliates<br>P. O. Box 536922<br>Atlanta, GA 30353-6922 |
| Three Rivers Systems, Inc.<br>P. O. Box 78609<br>St. Louis, MO 63178 | Waste Management of Jackson - TN<br>P. O. Box 9001054<br>Louisville, KY 40290 |
| Gerald F. Mace, Esq.<br>Robert P. Sweeter, Esq.<br>511 Union Street, Suite 2700<br>Nashville, TN 37219<br>gerald.mace@wallerlaw.com<br>robert.sweeter@wallerlaw.com | GE Money Bank<br>c/o Recovery Management Systems Corp.<br>25 SE 2nd Avenue, Suite 1120<br>Miami, Florida 33131-1605<br>claims@recoverycorp.com |

In Re: Lambuth University
Case No. 11-11942 GHB
Page 12 of 12

| | |
|---|---|
| TN Dept. of Labor & Workforce<br>c/o TN Attorney General's Office/Bankr. Div.<br>P.O. Box 20207<br>Nashville, Tennessee 37202-0207 | Department of Finance of Administration<br>Office of Real Property<br>William R. Snodgrass Tennessee Tower<br>22nd Floor - 312 Rosa L. Parks Avenue<br>Nashville, TN 37243-1102 |
| Vincent K. Seiler<br>Spragins, Barnett & Cobb, PLC<br>312 East Lafayette Street (38301)<br>Post Office Box 2004<br>Jackson, Tennessee 38302-2004 | |

/s/ Stephen W. Ragland
Stephen W. Ragland

9746867.5